```
J1FKNELC
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

        v.                           18 CR 454 (KPF)

KAWAIN NELSON, DARRELL HUDSON,
JONATHAN PADILLA, SILVIO
CIPRIAN, LAMAR GRIFFIN, JACKIE
COOPER, SHARON HATCHER, EFRAIN
REYES,

             Defendants.

------------------------------x

                                    New York, N.Y.
                                    January 15, 2019
                                    10:15 a.m.

Before:

               HON. KATHERINE POLK FAILLA,

                            District Judge

                        APPEARANCES

GEOFFREY S. BERMAN,
    United States Attorney for the
    Southern District of New York
SARAH KRISSOFF
FRANK J. BALSAMELLO
    Assistant United States Attorneys

FLORIAN MIEDEL
    Attorney for Defendant Nelson

JAMES MATTHEW BRANDEN
    Attorney for Defendant Hudson

THOMAS F. DUNN
    Attorney for Defendant Padilla

J1FKNELC

APPEARANCES (Continued)

LAWRENCE A. DUBIN
     Attorney for Defendant Ciprian
BY:  THOMAS F. DUNN

CHANEL MARIE SOCHACKI
     Attorney for Defendant Griffin

MICHAEL H. SPORN
     Attorney for Defendant Cooper

STEPHEN TURANO
     Attorney for Defendant Hatcher

MARLON GEOFFREY KIRTON
     Attorney for Defendant Reyes

1           (Case called)
2           THE DEPUTY CLERK:  Counsel, please state your names
3  for the record, beginning with the government.
4           MR. BALSAMELLO:  Good morning, your Honor.  Frank
5  Balsamello and Sarah Krissoff, for the United States.
6           THE COURT:  Good morning.
7           MR. MIEDEL:  Good morning, your Honor.  Florian
8  Miedel, for Kawain Nelson, the first in the second row.
9           THE COURT:  Thank you very much.
10          MR. BRANDEN:  Good morning, Judge.  Jim Branden, for
11 Darrell.  He's second from the left.
12          THE COURT:  Yes, thank you.  And good morning to both
13 of you.
14          MR. DUNN:  Good morning, your Honor.  Thomas Dunn, for
15 Jonathan Padilla.  He's in the third seat, closest to you.
16          And I'm standing in for Larry Dubin, for Silvio
17 Ciprian.
18          THE COURT:  Yes.  And thank you for doing that.  I
19 appreciate it.  Good morning to all of you.
20          Yes?
21          MS. SOCHAKI:  Good morning, your Honor.  Chanel
22 Sochacki, here with Mr. Lamar Griffin, in the second row.
23          THE COURT:  Yes.  Mr. Griffin is the fourth?  Sir,
24 hello.
25          MR. SPORN:  Good morning, your Honor.  Michael Sporn,

1   for Jackie Cooper.  He's in the second row, on the opposite
2   end.
3              THE COURT:  Yes.  Good morning to both of you.
4              MR. TURANO:  Good morning, your Honor.  Stephen
5   Turano, on behalf of Sharon Hatcher, present in the first row.
6              THE COURT:  Good morning.  Thank you.
7              MR. KIRTON:  Marlon Kirton, for Efrain Reyes.  He's in
8   the first row, first seat.  Good morning, your Honor.
9              THE COURT:  Good morning, and thank you.
10             All right.  Let me just begin with a housekeeping
11  measure:  I am aware that we're working with some strange
12  times, and we have some issues, but just to advise the
13  government on the issue of where this conference is, we've
14  twice scheduled it in courtroom 506.  We -- I have access to
15  three courtrooms in this building, and I'm at the mercy of
16  whatever I'm told is available.  For reasons that I don't quite
17  know, your office has continued to advise the marshals that
18  folks are to be brought to courtroom 110.  So part of the
19  problem this morning was that the marshals do not understand
20  why I wasn't in courtroom 110, even though we had actually put
21  a notice on the docket that it was going to be in courtroom
22  506.
23             MR. BALSAMELLO:  Yes, your Honor.  And this morning, I
24  believe 8:00 or 8:30, I responded to our prisoner production
25  saying we were here were in 506, so I'm not sure if that maybe

1  didn't make it to the marshals in time, but we notified them
2  this morning.
3          THE COURT:  All right.  I received a call shortly
4  before 10:00 wondering whether 110 was the appropriate place to
5  produce.  It is fine now, and I'm not faulting anyone, because
6  these are, again, very confusing times, but I just wanted to
7  make sure so that we're all aware for wherever the next
8  conference is.
9          Mr. Balsamello, should I be speaking with you or with
10 Ms. Krissoff about discovery and next steps in the case?
11         MR. BALSAMELLO:  I'm happy to address them, and if
12 Ms. Krissoff knows something I don't, we can confer, and she
13 can address it.
14         THE COURT:  Okay.
15         MR. BALSAMELLO:  In terms of discovery since the last
16 conference, we've spoken extensively with defense counsel, with
17 Julie de Almeida, with the Court.  The issue with material
18 getting into the prison was resolved very quickly after that
19 last conference.  Things went in within the week or two that
20 followed, and those hard drives were all -- that issue was
21 completely resolved, I think on a timeline the Court was aware
22 of when it was happening.
23         THE COURT:  Yes.
24         MR. BALSAMELLO:  In terms of discovery, we've produced
25 a great deal of material.  Much goes, in our view, well beyond

Rule 16. We produced a lot of buy reports and NYPD material that in the interests of just transparency and giving the defense what we have, we've done that.

So, in our view, everything that is in our custody that is to be produced at this point has been produced. There is a very, very small segment of material that's outlying, which is buy videos where the undercover's face was visible on the video. The PD has been continuing to work through those to redact them. It's a very time-consuming process because it could be extended stretches where the face is visible, and they have to redact it frame by frame of that video. So there are approximately ten to fifteen of those videos still outstanding.

With respect to defendants who are here today: It's about half of those relate to one of those two defendants, Mr. Reyes and Mr. Padilla. Before this conference --

THE COURT: One moment, please. Half of the videos that are still outstanding relate either to Mr. Reyes or to Mr. Padilla?

MR. BALSAMELLO: One relates to Mr. Reyes, and I believe about seven relate to Mr. Padilla. Now, these may also be some that were produced. There may be some duplication happening here. We're trying to figure out -- the PD has actually redacted videos we've produced already anyway. In the interests of making sure Mr. Padilla has the videos and everyone has their videos, we've given Mr. Dunn a disk today

1   with any that are unredacted, and he can bring those and show
2   those to Mr. Padilla.  As soon as we have redacted versions,
3   those will go into the prison, but at least counsel has a copy
4   of them, and he can review them.
5            He already has multiple videos of his buys, some of
6   which may actually, like I said, overlap with the ones that PD
7   is redacting.  So they're out there, and counsel has them, and
8   that is the last very small subset of material at issue.
9            THE COURT:  Just so that I'm clear, there are
10  approximately ten to fifteen videos that are still in the
11  redacting process?
12           MR. BALSAMELLO:  Correct.  We're also going -- for the
13  entire case, for all counsel, we're going to produce all of the
14  ones that remain under the protective order, so that counsel
15  have them, and, again, they can bring them and show them to
16  their clients.  For the sake of making them available to the
17  people who were actually involved in the sale, that's why we
18  made special disks for Mr. Dunn and Mr. Kirton this morning.
19  But everyone else will have them.  If they want to look at
20  codefendants' buys, their attorneys will have them and be able
21  to show them.
22           THE COURT:  All right.  Again, just let me follow up,
23  please.  If one of them related to Mr. Reyes and approximately
24  seven related to Mr. Padilla, do the remaining three to eight
25  of them relate to others who are present today in court, or

1    others who are as yet uncharged, or something else?
2             MR. BALSAMELLO:  No.  We have several that relate to
3    Defendants Collins and Crooms.
4             THE COURT:  Thank you.
5             MR. BALSAMELLO:  And those will also be included --
6    when we produce to all counsel, those will be included, too.
7    So the attorneys will have all of those, again, under the
8    protective order, just so that for the undercover's safety, we
9    don't want his face floating around the prison, but the
10   defendants will be able to see all those videos.
11            THE COURT:  To the best of your recollection, sir, the
12   issues that we discussed at the last conference were resolved
13   within a few weeks of the last conference?
14            MR. BALSAMELLO:  Yes.  The hard drives were received
15   from Ms. de Almeida, we put all of the discovery to date on
16   those drives and produced them straight to the prisons.  I
17   think it took a couple of days in the prison system to get to
18   the library, but they have been there for months now.  And
19   every production we've made since, if there have been small
20   items that have come through -- for instance, newly redacted
21   buy videos -- at the time we produced them to counsel, we've
22   also put them into the prisons.
23            THE COURT:  I understand.
24            To the best of your recollection, there are no
25   outstanding subpoenas of which the government is aware?

1    MR. BALSAMELLO:  I don't believe so, no.

2    THE COURT:  All right.  I appreciate that
3    investigations are ongoing and anything can happen, but you're
4    not awaiting, for example, a trove of bank records yet to
5    produce?

6    MR. BALSAMELLO:  No.  Or any sort of search warrant
7    material or anything, no.  We don't have anything like that
8    outstanding.  As the investigation goes on, if there are
9    potentially additional defendants or if we learn that other
10   people were connected to this conspiracy that become -- sort of
11   put them under the umbrella of Rule 16, we'll obviously make
12   those productions right away.

13   THE COURT:  Thank you for letting me know.  Anything
14   else you'd like me to know, sir?

15   MR. BALSAMELLO:  No.  We sort of began the discussion
16   with counsel about dates going forward.  We're open to defense
17   counsel's proposed schedule, motions, and any other dates they
18   want to set down.  Plea offers, I think, we'll start extending
19   within the next week or two.

20   THE COURT:  Okay.  Thank you.

21   Mr. Miedel, you are the first person in my line of
22   vision.  Do you wish to talk to us, or is there someone on the
23   team who wishes to speak for all defense counsel?

24   MR. MIEDEL:  I think Mr. Sporn was elected.

25   THE COURT:  Oh, Mr. Sporn.  I appreciate your

1    election, sir.  Please let me know what you'd like to do.

2            MR. SPORN:  Well, that's one of --

3            THE COURT:  I'm going to ask you to grab a microphone,
4    if there's any one nearby you, because in this courtroom,
5    acoustics are not great.

6            MR. SPORN:  Sure.

7            THE COURT:  Thank you.

8            MR. SPORN:  In terms of discovery, I don't know that I
9    have anything else to add, certainly not on behalf of my
10   client, and I think we're all similarly situated.  I think
11   we're at the point where if your Honor wants to move the case
12   forward, we could -- which, of course, I know you do -- we
13   could have a motion schedule.  But I want to make a point of
14   letting your Honor know that I think we're all in what I regard
15   as active discussions with the government, and, hopefully,
16   those will be fruitful, although it's premature to say that for
17   sure.

18           I raise that because, as an alternative to setting a
19   motion schedule, I think I would propose a fairly shorter
20   status conference before we do that.  My only concern is with a
21   motion schedule, that might impose an artificial deadline on
22   the discussions that are just starting to heat up, and I think
23   those discussions will result in not having to make motions,
24   for the most part.

25           THE COURT:  Let me push back a little bit on that,

1  please.

2       MR. SPORN:  Sure.

3       THE COURT:  I want you and your respective clients to
4  have all of the time that you need to consider whatever plea
5  offers are made by the government.  The only concern I have
6  about another status conference is simply coordinating the
7  schedules of the many attorneys involved.  So while I'm happy
8  to do that in a period of 30 to 45 days, if you think that is
9  the time you need to evaluate these proposals, the alternative
10 is to set a motion schedule where the opening brief isn't due
11 for 60 days, and, at that point, my hope is -- you'll tell me
12 if I'm wrong -- that you'll know whether your discussions can
13 be fruitful in the sense of resolving the case short of trial
14 or not.

15      MR. SPORN:  Yes, I think that's sensible, Judge.  I
16 think that would work for us.

17      THE COURT:  Again, I'm happy to see everyone as often
18 as you'd like.  It's just there are a number of you, and I
19 don't know that you all have so much free time, that we can
20 schedule a conference, but if you want to talk amongst your
21 friends and let me know your view, that's fine.

22      MR. SPORN:  Yes, let me just do that for one moment.
23      THE COURT:  Please.
24      (Counsel confer)
25      MR. SPORN:  Your Honor, I think we would be fine with

1    the 60 days for a motion schedule, but with the caveat that at
2    least one of us, I think, would prefer to actually take a shot
3    at having another status conference before we do that.  But I
4    think there's a consensus that all of us could go with either
5    approach.
6            THE COURT:  All right.  Well, let me give you option
7    B, which is can you figure out a time in the next 30 to 45 days
8    when you're all available?  Because someone is going to have a
9    trial, everyone's always got a trial, so if you have -- again,
10   I would welcome a conference.  So if you can figure out a time,
11   and it works with my schedule, I'll be here.
12           MR. SPORN:  Okay.  You want to give us another minute?
13           THE COURT:  Of course.
14           MR. SPORN:  Thank you, Judge.
15           (Counsel confer)
16           MR. SPORN:  Judge, if your Honor would approve it,
17   we're all available February 27th to have that status
18   conference.  Hopefully, that will give us enough time for the
19   government to formulate what they wanted to do and convey that
20   to us.
21           THE COURT:  At the moment, I am on trial that week,
22   but let me hope against hope that the government shutdown will
23   be resolved by then, and let's set it, please, for 3:00 o'clock
24   on that day, and I will move the civil conference that I have.
25   So 3:00 o'clock on February 27th.

Case 1:18-cr-00454-KPF   Document 79   Filed 02/14/19   Page 13 of 18    13
J1FKNELC

1    MR. SPORN: I appreciate it.

2    THE COURT: That is a time that works for everybody?

3    COUNSEL: Yes, Judge.

4    THE COURT: Okay.

5    Let me just ask: I'm not making light of current
6    events, but so far, no one is having any problems meeting with
7    or speaking with their clients?

8    Yes, Mr. Miedel?

9    MR. MIEDEL: Well, your Honor, for example, I was
10   there yesterday at the MDC, but I was turned away because there
11   was no visiting, but I don't know how more and more frequent
12   that kind of occurrence is going to happen, but it's obviously
13   happened several times already in the last two weeks, but we'll
14   see.

15   THE COURT: Okay. Yes, sir?

16   MR. SPORN: I think this is a gathering storm, Judge.
17   Yesterday people were turned away, and I think that's been a
18   chronic problem over the last week or two. It's a hit-and-miss
19   thing, you never know until you get there, unfortunately,
20   unless you happen to catch an email that people send out to
21   notify us, which sometimes happens, sometimes doesn't, but it's
22   a problem.

23   THE COURT: We board of judges were just advised
24   yesterday by Mr. Patton from the Federal Defenders about some
25   issues. Again, I'm not ascribing any blame at this point

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1    because I understand the staffing issues, but it may be -- if
2    it complicates the discussions that you're having with your
3    clients, we may need to have some meetings with the Marshals
4    Service or with the Bureau of Prisons to figure out what can be
5    done as an accommodation.  So I wanted to know whether what
6    Mr. Patton was telling me was something specific to Federal
7    Defenders, which I doubted very much, or was more widespread.
8    Which --
9              MR. BRANDEN:  We've all had trouble, Judge.  Mostly in
10   the MDC so far, but we've all had problems.
11             MR. SPORN:  He's kept the panel in the loop with the
12   same information, I'm sure, that he's conveying to the Court.
13             THE COURT:  I understand.
14             So we will be setting this conference on the 27th.
15   And it is my understanding, obviously, if folks reach
16   resolution with the government and want to have a plea
17   proceeding prior to that date, let me know, and we'll put you
18   on the calendar as soon as we can.
19             For everyone else who appears on that date, it's my
20   expectation that there will be a motion schedule proposed that
21   will not be unduly long, so that we can move the case
22   appropriately, not too fast, not too slow, but just
23   appropriately.  So I will see you on that day.
24             Let me ask, though, of the defense counsel here:  Are
25   there any issues specific to any of your clients that you want

1     to bring to my attention in this proceeding?
2                MR. BRANDEN:  No, Judge.
3                MR. MIEDEL:  No.
4                MR. DUNN:  Yes, your Honor.
5                THE COURT:  Yes, sir.  Thank you, Mr. Dunn.
6                MR. DUNN:  My client has a separation on him in MCC,
7     and he's separated, for example, from his brother, and he can't
8     go, as a result, to any kind of programs, religious services.
9     I brought this to the attention of the prosecution, and they
10    advised me they're going to look into it.  I just wanted to put
11    that on the record.
12               THE COURT:  It is on the record.  Did you bring it to
13    their attention today or sometime earlier?
14               MR. DUNN:  I mentioned something a while back, but I
15    brought it again today.
16               THE COURT:  Thank you.
17         Mr. Balsamello, do you have any incite into the issue?
18               MR. BALSAMELLO:  I don't recall it being brought up
19    earlier, but I'm not doubting Mr. Dunn, he may well have with
20    me or a colleague, but we will check it today.  I don't know
21    him to be separated from his brother, but there are certain
22    separations related to the case that we would keep in place,
23    and if there are ones we can lift, we'll do that.
24               THE COURT:  Okay.  Mr. Dunn, just so that we're all
25    clear, the concerns that your client has expressed to you are

|   |   |
|---|---|
| 1 | that there are programs and religious services that he is not |
| 2 | able to participate in; is that correct, sir? |
| 3 | MR. DUNN:  That's correct, your Honor. |
| 4 | THE COURT:  Okay.  Thank you. |
| 5 | Mr. Balsamello, you'll excuse me if I sound like I |
| 6 | don't know what I'm talking about.  Is there a possibility of |
| 7 | Mr. Dunn's client being moved to a different facility? |
| 8 | MR. BALSAMELLO:  I can inquire.  That is usually not |
| 9 | the step BOP takes. |
| 10 | THE COURT:  That is fine. |
| 11 | MR. BALSAMELLO:  But if there are separations that |
| 12 | can't be lifted, and they are creating burdens, we can inquire |
| 13 | with BOP if they would.  Given the circumstances now, I would |
| 14 | not be optimistic about that, but I can certainly ask. |
| 15 | THE COURT:  I thank you. |
| 16 | I'm going to understand, sir, that in the next couple |
| 17 | of days, you're going to speak about this with Mr. Dunn, and |
| 18 | that you will let me know if there's something that I can get |
| 19 | involved in.  I'm not going to call you up tomorrow and make |
| 20 | sure you made the calls, I just know that you will do it, but |
| 21 | you will please let me know if there's something that I can do. |
| 22 | MR. BALSAMELLO:  I will, yes. |
| 23 | THE COURT:  Thank you so much. |
| 24 | Mr. Dunn, anything else with respect to your client or |
| 25 | the client for whom you are standing? |

1          MR. DUNN:  No, your Honor.
2          THE COURT:  Anyone else have anything specific to
3     raise to your clients?
4          MR. SPORN:  No, your Honor.
5          MR. KIRTON:  No, your Honor.
6          THE COURT:  Okay.  Thank you very much.
7          Mr. Balsamello, is there an application from the
8     government?
9          MR. BALSAMELLO:  Yes.  We would ask that time be
10    excluded between today and, I believe it was, February 27th, to
11    allow the parties to have the plea discussions we've been
12    referring to and for the defense to continue reviewing
13    discovery and consider any motions potentially for a schedule
14    to be set at that conference.
15         THE COURT:  Thank you.
16         Is there any objection or position from the defense?
17         MR. MIEDEL:  No objection.
18         MR. BRANDEN:  No objection.
19         MR. DUNN:  No objection.
20         COUNSEL:  No objection.
21         THE COURT:  Thank you very much.  You'll let me
22    address your clients directly.
23         Lady and gentlemen, we've met at prior proceedings,
24    and there have been applications for the exclusion of time
25    under the Speedy Trial Act.  I am pleased in a way that I

wasn't in our last conference to hear that discovery issues have been resolved and these materials have been produced.  I think this is perhaps one of the most critical stages of your case, where you and your attorney, upon reviewing the discovery, decide what it is you want to do, and the government, upon reviewing the same discovery, decides if there is an offer that can be made.

I want to make sure that you and your attorneys have the time that you need to consider any offer the government makes and to discuss with the government the terms of such offer, and I also want to make sure they speak with you, so that you're fully informed as you make a decision about whether to file motions or whether to resolve this case short of trial.  For all of these reasons, I am finding that the ends of justice served by excluding the period of time from today's date through the 27th of February outweigh the interests that each of you has and that the public, in general, has in you getting to trial more quickly.  I will see you on the 27th of February, if not sooner.

Thank you very much.

We are adjourned.

* * *