XK4DsREY                        SEALED

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   UNITED STATES OF AMERICA,

 4             v.                        18 CR 454 (KPF)
                                         Telephone Conference
 5   EFRAIN REYES,

 6             Defendant.

 7   ------------------------------x

 8                                       New York, N.Y.
                                         April 13, 2020
 9                                       1:00 p.m.

10
     Before:
11
                    HON. KATHERINE POLK FAILLA,
12
                                         District Judge
13

14                        APPEARANCES

15   GEOFFREY S. BERMAN
          United States Attorney for the
16        Southern District of New York
     FRANK J. BALSAMELLO
17        Assistant United States Attorney

18   MARLON G. KIRTON
          Attorney for Defendant
19

20

21

22

23

24

25
```

XK4DsREY                              SEALED

1            (The Court and all parties appearing telephonically)

2            MR. BALSAMELLO:  Good afternoon, your Honor.

3            Frank Balsamello for the United States.

4            MR. KIRTON:  Marlon Kirton for Mr. Reyes.

5            Good afternoon, your Honor.

6            THE COURT:  Good afternoon.  Is Mr. Reyes on the line?

7            THE DEFENDANT:  Yes, ma'am.

8            THE COURT:  All right.  Mr. Reyes, good afternoon to

9    you.

10            Is there anyone else on the line that I should know

11    about?

12            THE DEFENDANT:  Not that I know of.

13            THE COURT:  Not that I know of either.

14            All right.  Thank you very much.  Let us please begin.

15            Mr. Kirton, beginning with you, could you tell me,

16    please, the opportunities that you have had in the last couple

17    of days or weeks to speak with Mr. Reyes about the rights that

18    he has with respect to having a sentencing proceeding in open

19    court and his ability to waive those rights?

20            MR. KIRTON:  Your Honor, the last time I had a

21    face-to-face meeting with Mr. Reyes was right before the State

22    of New York issued the shelter stay-at-home order.

23            At that meeting, we discussed the probation report and

24    issues regarding the sentencing.  I have not spoken to him

25    directly about today's proceeding.  I have had conversations

XK4DsREY                          SEALED

1    through third parties.  He's aware that the original sentencing

2    was May 7 of this year.  It's been moved up, at our request

3    with the government's consent, to April 16.  And, again, I made

4    an additional request over the weekend to move it up to Monday.

5            So this information was communicated from me to his

6    family members to Mr. Reyes about the dates being moved because

7    of the COVID-19 pandemic.

8            THE COURT:  Mr. Kirton, may I address your client

9    directly on these issues?

10           MR. KIRTON:  Sure.

11           THE COURT:  Mr. Reyes, you're able to hear me, sir,

12   correct?

13           THE DEFENDANT:  Yes, ma'am.

14           THE COURT:  If at any time you can't hear me, you'll

15   have to let me know, and we'll just try to figure out how that

16   is going.  Maybe from time to time I'll just check in to make

17   sure I'm hearing from you.

18           Sir, because of things that have been going on right

19   now, you know, proceedings that would normally take place in a

20   courtroom, some of them are not taking place in a courtroom.

21   With respect to this sentencing proceeding, I understand from

22   your attorney that there are a number of reasons why you might

23   want your sentencing date to be accelerated.  Perhaps, you

24   know, to get you out of the current facility, concerns about

25   your health, things of that nature.

XK4DsREY                          SEALED

1          There are certain rights that you have.  I just want
2    to make you aware of those rights as we're talking.  I'm going
3    to ask you to listen to me, and if there is anything that I'm
4    saying that is confusing to you, either I'll give you some
5    other information or we'll let you take a break to speak with
6    your attorney.
7          Mr. Reyes, so far have you heard everything I've said
8    and understood everything I've said?
9          THE DEFENDANT:  Yes, ma'am.
10         THE COURT:  Mr. Reyes, you have a right to appear
11   before a judge in a courtroom in the Southern District of New
12   York at the time of your sentencing.  You have the right to
13   speak directly in that courtroom to the sentencing judge, who
14   is me.
15         Do you know that, sir?
16         THE DEFENDANT:  Yes, ma'am.
17         THE COURT:  Do you also understand that because of the
18   public health emergency created by the COVID-19 pandemic, there
19   have been interferences with travel.  There have been
20   restrictions on access to the federal courthouse.
21         Are you aware of that, sir?
22         THE DEFENDANT:  Yes, ma'am.
23         THE COURT:  It is my understanding, Mr. Reyes, that
24   you don't want to wait until the end of this emergency to be
25   sentenced?

SEALED

1          THE DEFENDANT:  No.

2          THE COURT:  You would rather be sentenced today, sir,

3     is that correct?

4          THE DEFENDANT:  Yes, ma'am.

5          THE COURT:  So is it fair to say that, on the issue of

6     sentencing, you've discussed issues of sentencing with your

7     attorney and that you are willingly giving up your right to be

8     present at the time your sentence is imposed in a courtroom

9     with your attorney by your side?

10          Is that correct, sir, that you're willing to give that

11     up and do this by telephone?

12          THE DEFENDANT:  Yes, ma'am.

13          THE COURT:  All right.  Do you also understand, sir,

14     that you're giving up this right to appear in a courtroom in

15     the Southern District of New York for your sentencing and your

16     right to have your attorney next to you at the time of

17     sentencing on a couple of conditions.  So let me please tell

18     you what these conditions are, sir.

19          You want your attorney to speak on your behalf at

20     sentencing telephonically, you want him to be able to make

21     arguments on your behalf, am I correct?

22          THE DEFENDANT:  Yes, ma'am.

23          THE COURT:  All right.  Sir, also, if at any time

24     during this proceeding you want to take a break and speak with

25     your attorney without the prosecutor and without me hearing

XK4DsREY                          SEALED

1  this conversation, all you have to do is let me know, and I

2  believe we have the ability with this phone system to put you

3  and Mr. Kirton into a private virtual room where you can have a

4  conversation we wouldn't listen to.

5          If at any time you want to have that privacy, you'll

6  please let me know.  Will you do that, sir?

7          THE DEFENDANT:  Yes, ma'am.

8          THE COURT:  Now, I've just talked to you about certain

9  rights that you have, and I think you are aware of a lot of the

10  issues going on with the pandemic.

11          It is your wish today, sir, to proceed with

12  sentencing, correct?

13          THE DEFENDANT:  Yes, ma'am.

14          THE COURT:  OK.  Thank you for letting me know.

15          Mr. Kirton, are there any additional questions that

16  you would like me to ask of your client?

17          MR. KIRTON:  No, your Honor.

18          THE COURT:  Mr. Balsamello, are there any additional

19  questions that you would like me to ask Mr. Reyes?

20          MR. BALSAMELLO:  No, Judge.  Thank you.

21          THE COURT:  No, I thank you very much.

22          Let me also note a couple of other things these are

23  more in the vain of housekeeping than anything else.

24          I am ordering that the transcript of this proceeding

25  be sealed.  It is my expectation that sensitive information is

XK4DsREY                              SEALED

1   going to be disclosed in this document and so, therefore, I am

2   going to order that it be sealed.  I don't think anyone is

3   objecting to that.

4           Mr. Kirton, let me please understand -- and if we need

5   to talk to Mr. Reyes about this, we will -- what is his current

6   housing status?

7           Is he being housed away from other detainees at GEO?

8           MR. KIRTON:  It is my information, your Honor, that he

9   is currently at the GEO facility, he has tested positive for

10  COVID-19, and he is in a cell, but he is not isolated and/or

11  segregated from any particular inmate.  I believe that his unit

12  is isolated amongst themselves, but he is not --

13          THE DEFENDANT:  Excuse me.

14          MR. KIRTON:  -- he is not six feet away or more from

15  other inmates within the unit.

16          THE COURT:  I think your client wants to --

17          THE DEFENDANT:  It is a dorm setting.  It is 40 --

18  yeah.  It's 40 people, dorm setting, guys are two feet apart in

19  beds.

20          THE COURT:  There are 40 people in this dorm and you

21  have tested positive.

22          Have other individuals within your dorm tested

23  positive, sir?

24          THE DEFENDANT:  Yes, ma'am.

25          THE COURT:  Am I correct in saying that today, right

1   now as you're speaking with me, you don't have any of the

2   symptoms that you had a couple days ago when you felt like

3   someone was sitting on your chest, correct?

4           THE DEFENDANT:  No, ma'am.  It's still a little

5   labored on breathing.

6           THE COURT:  Little labored.  OK.

7           THE DEFENDANT:  Showing much improvement every day.

8           THE COURT:  That is great.  That is actually, I think,

9   the most important thing we can hear in this proceeding.  We

10  certainly care about your health.

11          But if you were to feel worse, would you be able to

12  seek medical attention, sir?

13          THE DEFENDANT:  Yes, ma'am.

14  ████████████    ████████████████████████████████

15  ████████████████████████████████████████████████████████

16  █████████████████████████████████████████████████

17  ████████████

18      █████████████████████████

19      █████████████████  ██████  ███████████████  █████████

20  ████████████████████████████████████████████████████████

21  ████████████████████████  ████████████████████████████  █

22  ████████████████████████████████████████████████████

23  ██████████████  █████████████████████████████████████

24  ████████████████████████████

25      █████████████████████████████████████████

XK4DsREY                              SEALED

```
 1
 2
 3
 4
 5
 6
 7
 8
 9
10
11
12
13
14
```

15          THE COURT:  OK.  I'm glad you're letting me know.

16   Thank you.

17          Is there something else you wanted to let me know,

18   sir?

19          THE DEFENDANT:  No.

20          THE COURT:  OK.  That's fine.

21          THE DEFENDANT:  That's it.  You know, the beds are

22   close to each other.  There is no way you can really quarantine

23   yourself against when the guys is, like, two feet apart, one

24   foot apart.  You know, everybody is around you.  We share the

25   bathroom.  We share the shower --

XK4DsREY                          SEALED

1           THE COURT:  Yes.

2           THE DEFENDANT:  -- you know.

3           THE COURT:  To the extent that there are people in

4   other dorms who have tested positive, have they tried to put

5   them all into a single dorm, or they are just everyone is

6   staying in whatever dorm they were assigned to originally, if

7   you know, sir?

8           THE DEFENDANT:  Everybody is staying in whatever dorm

9   you've been in.

10          THE COURT:  I understand.  OK.  Thank you.

11          Mr. Kirton, I don't think, I hopefully was not

12  intending to blindside you, sir.  I just, preliminary to this

13  proceeding, I received some medical forms from GEO, and I think

14  their concern was that they didn't want to be perceived as

15  inattentive to Mr. Reyes' medical needs.  I don't know that

16  they understood.  I now understand why he might refuse medical

17  treatment and yet still feel not 100 percent.

18          Mr. Kirton, is there any clarification that you wish

19  to give to me on these issues?

20          MR. KIRTON:  Well, your Honor, I received, I believe,

21  a call from my client's family Saturday morning after the

22  government informed me my client was positive for COVID-19.

23  And based on the government's, I guess, e-mail and the

24  conversations I had with my client's family, I submitted a

25  letter to the court asking that my client be sent to a

XK4DsREY                          SEALED

1    hospital.

2                    THE COURT:  Yes.

3                    MR. KIRTON:  Because I didn't feel he was getting the

4    proper treatment at the GEO, that he was not in a position to

5    self-isolate, he was not on a ventilator, and he was suffering

6    from, I guess, conditions that suggested to me that he was in

7    serious trouble.

8                    I didn't have the benefit of the medical records from

9    GEO which the court outlined and clarified by speaking to Mr.

10   Reyes.  So I'm glad and grateful that the court granted our

11   request to have the case advanced to today, and I understand

12   why the court didn't grant the other party application, which

13   was to send my client to a hospital.

14                    But I think that issue has been clarified and I think

15   we're ready to proceed today.

16                    THE COURT:  ███    █████████████████████████████

17   ████████████████████████████████████████████████████████████

18   ████████████████████████████████████████████████████████████

19   ████████████████████████████    ████████████████████████████

20   ████████████████████████████████████████████████████

21   ██████████████████████████████████████████████

22   ██████████████████████████████████████████████████

23   ██████████████    ██████████████████████████████████████

24   ███████████████████████

25                    I want to make sure that I have the documents that I

XK4DsREY                          SEALED

1 | should have for this sentencing proceeding, so let me please

2 | begin.

3 |         I have a presentence investigation report that is

4 | dated April 2 of 2020; I have a defense sentencing submission

5 | that is dated April 8 of 2020; I have a government sentencing

6 | submission dated April 8 of 2020.

7 |         Mr. Kirton, should I have anything else from the

8 | defense?

9 |         MR. KIRTON:  I submitted two additional letters that

10 | were relevant to the advancing the sentencing from April 16 to

11 | today.

12 |         THE COURT:  Yes.

13 |         MR. KIRTON:  I assume --

14 |         THE COURT:  OK.  I did get those.  I did not

15 | understand those to be things you wanted to be considered at

16 | sentencing.  I was considering them in the vain of the request

17 | for accelerating the sentencing.

18 |         Yes, I did get two additional letters detailing your

19 | client's condition since learning of the positive test.  I have

20 | both of those.

21 |         Something else, sir?

22 |         MR. KIRTON:  No, your Honor.

23 |         THE COURT:  OK.  Mr. Balsamello, should I have

24 | anything else from the government?

25 |         MR. BALSAMELLO:  No, your Honor.

XK4DsREY                         SEALED

1          THE COURT:  Mr. Balsamello, looking at the presentence

2   investigation report, just looking at the dates, it may be the

3   case that the parties did not have the time that they would

4   otherwise have under Federal Rule of Criminal Procedure 32 to

5   review and to make any corrections.

6          To the extent that you had that right under Rule 32,

7   do you waive that right, sir?

8          MR. BALSAMELLO:  Yes, your Honor.

9          THE COURT:  Do you personally, sir -- you, the

10  government, I don't mean you personally -- do you, the

11  government, have any corrections to make to the PSR?

12         MR. BALSAMELLO:  I don't, your Honor.  To the extent

13  there are any differences between anything in there and our

14  sentencing submission, obviously my submission reflects my best

15  understanding of the facts, and I'm not aware of anything in

16  the PSR that is inconsistent with that.

17         THE COURT:  All right.  Mr. Kirton gave me three

18  proposed edits or corrections to the PSR, name changes ████

19  ████████████████████████████████████████████████████

20  ██████████

21         Do you -- by you, I mean the government -- dispute any

22  of those proposed edits to the presentence investigation

23  report?

24         MR. BALSAMELLO:  No, I don't.

25         THE COURT:  OK.  Then I will order those changes made

XK4DsREY                          SEALED

1    to page 16, paragraph 78, line three; page 16, paragraph 79,

2    lines two and three; and page 17, paragraph 85.  I will order

3    the PSR to be modified as discussed in Mr. Kirton's submission.

4              Mr. Kirton, turning to you, sir, have you had a

5    sufficient opportunity to review the presentence investigation

6    report in this case?

7              MR. KIRTON:  Yes, your Honor.

8              THE COURT:  To the extent that there is -- I think

9    there is a 35-day period in which you should have it and that

10   period has not happened yet, do you waive that particular

11   provision of Rule 32?

12             MR. KIRTON:  Yes.  Yes, your Honor.

13             THE COURT:  Other than the three corrections that are

14   contained in your sentencing submission, do you have any other

15   modifications or corrections to the presentence investigation

16   report?

17             MR. KIRTON:  No, your Honor.

18             THE COURT:  Sir, have you had an opportunity -- I

19   think I heard you say earlier that you had an opportunity to

20   review this report with Mr. Reyes, is that correct?

21             MR. KIRTON:  Yes, I have.

22             THE COURT:  Did you have an opportunity to review with

23   him the conditions of supervised release that are contained at

24   the back of the report?

25             MR. KIRTON:  OK.  So the short answer is no.  I went

XK4DsREY                          SEALED

1    over the draft report with my client.  I also gave him a copy

2    of the report.  I read it to him and we discussed it together.

3    We did not go over the final probation report, which has only

4    minor changes to a few of the paragraphs.  The only substantive

5    difference between the draft report and the final report are

6    the recommendations and the conditions outlined by the court.

7            I would like to have at least one minute to discuss

8    that with him.  But other than that, I have discussed the

9    entire report with my client.

10           THE COURT:  OK.  What we will do at some point is have

11   that break-out proceeding.  We'll put you into a room so you

12   can discuss these with your client.

13           Ultimately, sir, I would like to know from your client

14   that you have reviewed them, that you either have or do not

15   have any objections to the proposed special conditions?

16           MR. KIRTON:  No.

17           THE COURT:  Well, I'll let you figure that out with

18   him, and that I can refer to them as a collective group of

19   mandatory standard and special conditions without reading them

20   into the record.  I will give you that opportunity, sir.

21   ████████████████████████████████████████████████████

22   ████████████████████████████████████████████████████████

23   ██████████████████████████████████████████████████████

24   █████████████████████████████████████████████████████

25   ███████████████

XK4DsREY                              SEALED

 1
 2
 3
 4
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

1

2

3

4

5

6

7

8

9

10

11          THE COURT:  OK.  I want to talk about that a little

12     bit later on.  Thank you.

13          Let me just review a couple more housekeeping matters

14     before I let you and your client speak about the conditions of

15     supervised release.

16          Mr. Balsamello, am I correct that this is another case

17     in which restitution and forfeiture are not issues?

18          MR. BALSAMELLO:  That's correct.

19          THE COURT:  Thank you for letting me know.

20          Mr. Kirton, this is a very, very small question, and

21     yet I'm asking it nonetheless.

22          There is a little bit of confusion in the PSR at page

23     two and at paragraph 98.  They recite that your client does not

24     have a GED.  In the sentencing submission there's a recital

25     that he got it during a shock incarceration program.

XK4DsREY                    SEALED

1           Do you know, sir?

2           MR. KIRTON:  As far as I know, he does have a GED.

3           THE COURT:  OK.  May I ask him or would you prefer I

4    not speak with him about the issue?

5           MR. KIRTON:  You can ask him, your Honor.

6           THE COURT:  Mr. Reyes, you're still there on the

7    phone, sir, yes?

8           THE DEFENDANT:  Yes, ma'am.

9           THE COURT:  Mr. Reyes, did you obtain a GED, general

10   equivalency diploma, when you were in a shock incarceration

11   program some years back?

12          THE DEFENDANT:  Yes, ma'am.  1999.

13          THE COURT:  1999?

14          THE DEFENDANT:  Yeah.  Moriah Shock.  I got my GED.

15   On July 3rd, they gave me my diploma.

16          THE COURT:  Tell me again where it was, sir.

17          Could you spell it for me, please?

18          THE DEFENDANT:  Moriah, M-o -- I believe it's

19   M-o-r-i-a-h.

20          THE COURT:  Thank you.  That will be another edit

21   we'll make to the presentence investigation report, and the

22   changes would be made to page two of the PSR and paragraph 98,

23   which they, at this time, state you don't have a GED, because

24   you now told me that you did.

25          THE DEFENDANT:  Um-hmm.

XK4DsREY                         SEALED

1              THE COURT:  Good.

2              Sir, something else you wanted me to know?

3              THE DEFENDANT:  No.  That's it.

4              THE COURT:  OK.  Thank you.

5              Let me ask if my deputy is on the line.

6              Ms. Noriega, are you there?

7              THE DEPUTY CLERK:  Yes, Judge.

8              THE COURT:  Are you able to put Mr. Kirton and

9     Mr. Reyes in a virtual private room so they can have this

10    conversation?

11             THE DEPUTY CLERK:  Yes, Judge.

12             THE COURT:  OK.  Then is it the case that the best way

13    to proceed is for Mr. Kirton to e-mail you so they can be taken

14    out and put into the main call with us?

15             THE DEPUTY CLERK:  In order to get out, they would

16    have to push star 710 pound, and if that doesn't work, then to

17    e-mail so we know to take them out.

18             THE DEFENDANT:  Hold on.  I need to write that down.

19             THE COURT:  OK.  Go ahead.

20             THE DEFENDANT:  Can I get a pen?

21             (Pause)

22             What was that?

23             THE COURT:  Star 710 and then the pound sign.

24             THE DEPUTY CLERK:  I apologize.  It is pound 710

25    pound.

1            THE COURT:  Rats, OK.

2            Pound 710 pound.

3            THE DEFENDANT:  OK.  I got it.

4            MR. KIRTON:  Then how do we get back into the general

5    conversation after that?

6            THE COURT:  My understanding is it puts you in after

7    that.  Ms. Noriega is able to take you and put you into that

8    private room, and then putting pound 710 pound takes you out.

9            MR. KIRTON:  OK.

10           THE COURT:  Ms. Noriega, am I correct?

11           THE DEPUTY CLERK:  That's correct.  I'll be putting

12   them in the room.  When they're finished with the conversation,

13   they would have to put in that code in order to get out.

14           THE COURT:  Thank you.

15           Please do that.  Let's put them in the room so they

16   can discuss the conditions of supervised release.

17           Thank you very much.

18           (Recess)

19           THE DEFENDANT:  Yes.

20           THE COURT:  All right.  Mr. Reyes and Mr. Kirton,

21   you've both returned.  That is great.  It shows that technology

22   is working.  Thank you.

23           OK.  Mr. Kirton, let me then ask you, have you had

24   enough of an opportunity during this bearing to speak with your

25   client about the various conditions of supervised release that

XK4DsREY                    SEALED

1    are set forth in the presentence investigation report?

2              MR. KIRTON:  Yes, your Honor.

3              THE COURT:  Do you have any objection to any of the

4    special conditions?

5              MR. KIRTON:  Well, one of the conditions is inpatient

6    drug treatment.  I recommended outpatient drug treatment for a

7    number of reasons.  That would be the only objection that I

8    would have, only because I think this facilitates my client's

9    move out of New York as quickly as possible, and I think

10   outpatient treatment program may be more consistent with that.

11   An inpatient program could last for up to a year.  It would not

12   allow my client to leave the State of New York, but also not

13   allow him to, in my view, to continue cooperation with the

14   government, should they want to do that.

15             Other than that, that's the only objection I would

16   have.  I would prefer an outpatient program that is consistent

17   with our recommendation.  I think that allows my client an

18   opportunity to leave New York, which I think is very important.

19             THE COURT:  Mr. Balsamello, let me hear from you as to

20   whether you agree with Mr. Kirton that, perhaps, the best move

21   here is to have an outpatient condition rather than inpatient

22   condition.

23             MR. BALSAMELLO:  I think I would be comfortable

24   starting with outpatient and, obviously, if there are relapses

25   and violations where it stems from drug use, we could revisit

XK4DsREY                        SEALED

1   inpatient.

2           Certainly, in the current medical climate anyway, I am

3   not sure confining him into any sort of new inpatient situation

4   would be best anyway.  I have no objection to that.

5           THE COURT:  I have the same reaction at this

6   particular time.  It may not be a wise idea to have an

7   inpatient treatment.

8           All right.  Mr. Kirton, I agree with you, and I will

9   make the modification that the condition reflect outpatient

10  rather than inpatient.

11          With that modification, do you have any objections to

12  the conditions?

13          MR. KIRTON:  No, your Honor.

14          THE COURT:  All right.  Mr. Reyes, you've just heard

15  me speaking with your attorney about the conditions of

16  supervised release.

17          Did you have an opportunity to review those conditions

18  with Mr. Kirton?

19          THE DEFENDANT:  Yes, ma'am.

20          THE COURT:  You've just heard that we want to -- we're

21  going to modify one of them so that the drug treatment program

22  would be outpatient rather than inpatient, ███████████████

23  ████████████████████████████████████████████████████████████

24  ███████████████████████████████████████████████

25  ████████████████████████████████████████████████████████

1        Do you understand that, sir?

2            THE DEFENDANT:  Yes, ma'am.

3            THE COURT:  If I refer to these conditions, which

4    would be the mandatory, the standard, and the four that are

5    suggested by the probation office as the mandatory standard and

6    special conditions of supervised release, will you understand

7    what I'm talking about, sir?

8            THE DEFENDANT:  Yes, ma'am.

9            THE COURT:  Do you agree that I don't have to read

10   these word for word into the record?

11           THE DEFENDANT:  Yes, ma'am.

12           THE COURT:  OK.  Thank you very much.

13           With that, I am adopting the presentence investigation

14   report as it has been modified, both by the three corrections

15   to the facts that have been suggested by Mr. Kirton and the one

16   correction or modification of the special conditions of

17   supervised release that we have just discussed.

18           I am accepting as well the guidelines calculations

19   that are contained in there and the factual statements as

20   modified.

21           With that, let me please hear from the parties with

22   respect to sentencing.

23           Mr. Balsamello, is there a motion you wish to make?

24           MR. BALSAMELLO:  Yes, Judge.

25           The government moves pursuant to Section 5K1.1 of the

1  guidelines and Section 3553(b) of Title 18 to sentence

2  Mr. Reyes in light of the substantial assistance that he

3  provided to the government, and I'm happy to elaborate on what

4  that assistance has been.

5        I'll note, as I do at any sentence, I will start by

6  acknowledging the seriousness of the criminal conduct that

7  Mr. Reyes did engage in.  he was part of a conspiracy that

8  involved a large number of people and that involved

9  distributing a large quantum of various different types of

10 drugs in a community that was very hard hit by drug use, by

11 drug addiction, and by violence and things that come with the

12 drug activity in that neighborhood.  So I don't want to turn

13 away from that aspect of what Mr. Reyes did and the reason that

14 he is here.



XK4DsREY                              SEALED

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

XK4DsREY                              SEALED

25        THE COURT:  OK.  Thank you very much.

XK4DsREY                            SEALED

1              Mr. Kirton, I'll hear from you.

2              MR. KIRTON:  Yes.  Good afternoon, your Honor.

3              We are going to request that my client receive a

4     sentence of time served and outpatient drug treatment.  We

5     think that that is consistent with the recommendation made by

6     the probation department and also we think to the court with

7     the government's motion and the 5K1.

8              I'm not going to repeat what I said in my sentencing

9     submission, I just want to bring up three points for the

10    court's consideration.

11             One, my client's future plans.  My client will live

12    with his niece.  I've spoken to her throughout the life of this

13    case on behalf of my client.  She saw a great deal of interest

14    in the case, but also my client's well-being.  She's employed

15    full time here in New York City.  She lives in an apartment

16    that she pays for in the Bronx.  I think she's the perfect

17    person for my client to stay with.  She does have rules in the

18    house.  She has expectations of my client.  He certainly

19    respects her, and they know each other.  And I think it is a

20    really good place for him to stay in the meantime until he

21    transitions to Pennsylvania.

22             The second point I wanted to make is there is some

23    clients that end up in an unusual way benefiting from the

24    services offered by the Bureau of Prisons and the federal court

25    system.  ███████████████████████████████████

XK4DsREY                         SEALED



17        I think the fact that my client has an opportunity to

18   remain drug free is one of the benefits of this case.  I submit

19   to the court that he will attend the outpatient drug treatment

20   program, and I submit to the court that should he continue to

21   do so, he will continue to think clearly and continue to make

22   decisions that are rational and best for himself as well as his

23   family.

24        The last thing I wanted to bring up is the situation

25   involving Mr. Epstein.  As you know, Mr. Epstein was probably

XK4DsREY                              SEALED

1   the most high-profile defendant in this district after

2   El Chapo.  This case garnered international attention.

3   Mr. Epstein had trouble adjusting to being in jail and the

4   population at the MCC.

5        He was placed, I believe, in the SHU with another

6   inmate who had a fairly high-profile case.  Things didn't work

7   out there.  He was finally placed with Mr. Reyes, who happened

8   to be in the SHU for a completely different reason.  They got

9   along very well and they both helped each other.  I think my

10  client was -- obviously he wanted to move out of the MCC to

11  GEO, but probably the only reason he didn't want to be

12  transferred out of the MCC was the relationship that he built

13  up with Mr. Epstein.

14       I think my client's presence stabilized Mr. Epstein,

15  to a certain extent, and I think it was very hard on my client

16  when Mr. Epstein committed suicide.  It was very, very

17  difficult.  ███████████████████████  ██████████

18  ███████████████████████  ██████████████████

19  ████████████████████████████████████

20  ██████████████████████████████████

21  █████████████████████████████████████████

22  ████████████████████████████████████

23  ███████████████████████████████████████

24  ████████████████████████████████████████

25  ███████

XK4DsREY                    SEALED

1    I submit to the court that should my client remain

2    drug free, he would continue to be useful, he will be a useful

3    member of society.  He would be someone that his family could

4    look up to and look to, and I think he could reach whatever

5    goals he has for himself going forward.

6    So I submit to the court that a sentence of time

7    served with outpatient drug treatment, consistent with the

8    recommendation made except the inpatient part, by the probation

9    department, and also consistent with, I think, the tenor and

10    tone of the government's 5K1 recommendation would be a

11    reasonable sentence under 18 U.S.C. 3553(a).

12    THE COURT:  Mr. Kirton, thank you very much.

13    Mr. Reyes, I want to make sure you're still on the

14    line.

15    Are you, sir?

16    THE DEFENDANT:  Yes, ma'am.

17    THE COURT:  That's the important thing.  Thank you.

18    Mr. Reyes, at this time, if you want to speak to me in

19    connection with your sentencing, I will hear from you.  You're

20    not obligated to speak to me, sir, but you're invited to do so.

21    If you do speak, I'll just ask you to speak a little louder and

22    a little slower than you might think you need to so that

23    everyone on this call can hear you.

24    Thank you.

25    THE DEFENDANT:  Yes, ma'am.

XK4DsREY                         SEALED

1          When I got arrested, when I got arrested in 2018, I

2     was a man with eyes but was blind.  I had a brain, but I was

3     thinking insane.  And throughout this time, I got a chance to

4     in recatch myself and get a second chance in life.

5          Nobody wants to go to jail, but getting arrested

6     really saved my life.  You know, I don't know how else I can

7     put it.  You know, I just want to get a chance to be a good

8     grandfather to my grandkids.

9          THE COURT:  How many grandkids do you have, sir?

10         THE DEFENDANT:  Five, ma'am.

11         THE COURT:  Five?

12         THE DEFENDANT:  Four boys and one girl.

13         THE COURT:  Four boys and one girl.

14         This is from your two daughters, Jocelyn and Rosalyn?

15         THE DEFENDANT:  Yes, ma'am.

16         THE COURT:  OK.  Congratulations to you, sir.

17         Anything else you would like me to know?

18         THE DEFENDANT:  No, ma'am.  That is it.

19         I appreciate you.  You always seemed like a fair judge

20    since day one.  You had our best interest in mind too, and

21    Frank was always fair with me.  The proffers that I did, I did

22    because it was the truth.  So, you know, I don't have no

23    problem saying the truth.

24         That's all it is.  That's it, ma'am.

25         THE COURT:  Thank you, sir.  Thank you very much.

XK4DsREY                         SEALED

1        All right.  Let me then do this.  Certainly,

2   Mr. Reyes, it would be better for so many reasons if we could

3   be in the same room and the same time and have this in person.

4   We can each take the measure of each other, we can each look at

5   each other in the eye and show how serious each one of us takes

6   this proceeding.

7        We don't have that opportunity.  I am listening to you

8   and I am believing you when you tell me about the things that

9   you want to change and the things that you're grateful have

10  changed during your period of incarceration.

11       I want to communicate to you how seriously I take your

12  case and how much I hope that this is the last time you have

13  contact with the criminal justice system.  What I'm going to do

14  now, sir, is I am going to describe the sentence that I intend

15  to impose, but I'm going to give each side an opportunity to

16  make legal objections, if there are legal objections to be

17  made, before the sentence is actually imposed.

18       I have been asked by the parties to consider certain

19  factors that have been set forth by congress in Section 3553(a)

20  of Title 18 of the United States Code.  They include such

21  things as the nature and circumstances of the offense, the

22  history and characteristics of Mr. Reyes, the need for the

23  sentence imposed to reflect the seriousness of the offense, to

24  promote respect for the law, to provide a just punishment for

25  the offense, to afford adequate deterrence to criminal conduct,

1    to protect the public from further crimes by Mr. Reyes, to

2    provide him with needed educational and vocational training,

3    medical care or other correctional treatment in the most

4    effective manner.

5           I must consider the sentencing guidelines and the

6    policy statements, and I'll talk about them momentarily.  I

7    must consider the need to avoid unwarranted sentence

8    disparities amongst similarly situated defendants.

9           Speaking about the guidelines in this case, the base

10   offense level under guideline Section 2D1.1 is 30.  There is a

11   two-level reduction because Mr. Reyes qualifies for what is

12   commonly known as the safety valve.  There is a two-level

13   reduction -- three-level reduction in total for acceptance of

14   responsibility, and that yields an adjusted offense level of

15   25.  Mr. Reyes has one criminal history point.  He is in

16   criminal history category I.  His applicable guidelines range

17   are 57 to 71 months.

18   ████████████████████████████████████████████████

19   ████████████████████████████████████████████

20   ████████████████████████████████████████████

21   ████████████████████████████████████████████████

22   ████████████████████████████████████████████

23   ██████████████████████████████████████████████████

24   ████████████████████

25           So the defense has asked for a term of time served.

XK4DsREY                          SEALED

1    The government hasn't asked for anything specific.

2              Mr. Reyes, I want to you listen very clearly to me,

3    sir.

4              Would you do that, please?

5              THE DEFENDANT:  Yes, ma'am.

6              THE COURT:  Mr. Reyes, I am sentencing you to time

7    served.  I want to talk just about it a little bit.  I just

8    wanted to tell you, I think it might be very stressful

9    otherwise for you to hear me talk and not know what the actual

10   sentence is.  I am telling you in advance that it is going to

11   be time served and to explain why, this case of yours, the 454

12   case as I know it, 18 CR 454, has a number of defendants, and I

13   think some of them are arguably more culpable than you because

14   they exploited an opportunity to inflict or perpetuate damage

15   on the Lambert Houses on the West Farms section.

16             I think some of your codefendants used or threatened

17   the use of violence, some of your codefendants preyed on

18   individuals who were especially vulnerable either because of

19   their poverty or because of their own addictions.  You are one

20   of the defendants on whom they preyed.  You were someone who

21   had a longstanding drug addiction and who basically -- I say

22   this not to demean you, sir, but just to explain what brought

23   you here and how far you've come since you've been here.

24             ██████████████████████████████████████████████

25   ████████████████████████████████████████████████████████████

XK4DsREY                          SEALED

1    ███████████████████████    ████████████████████████

2    ██████████████████████    █████████████████████████

3          I am concerned, as you are concerned, about the

4    COVID-19 diagnosis, and I hope that the symptoms you have

5    remain at this low but perceptible level.  I am glad to hear

6    that your life has been straightened out in large measure by

7    you, that you've helped the government.  ████████████████████

8    ████████████████████████████████████████████████████████

9    ████████████████████████████████████████████

10   ██████████████████████████████████████████████████

11   ██████████████████████████████████

12         It is my hope, as I am sure it is your hope, that with

13   your niece and then ultimately with your move to Pennsylvania,

14   you will find the life that you deserve.

15         I am ordering that that term of imprisonment of time

16   served be followed by a term of supervised release of four

17   years.  I know the defense has sought three, but I want to have

18   that additional year in case there are additional services that

19   the probation office can provide to aid Mr. Reyes with his

20   reentry into society.

21         If it turns out after three years that the probation

22   officer and Mr. Reyes believe that three years is enough, then

23   I will certainly listen to a motion for early termination of

24   supervised release.

25         The special conditions include the outpatient

XK4DsREY                    SEALED

1    treatment program and the other matters that were addressed in

2    the PSR.  I'm just noting the outpatient because I think that

3    is important.  And a search condition.  I think there is, as

4    well, a cognitive behavioral program.  There is a

5    recommendation that you be supervised in the district of your

6    residence.

7            I am not imposing a fine or restitution for sure, but

8    I am obligated to impose a $100 mandatory special assessment.

9            Mr. Balsamello, is there any reason why I may not

10   impose that sentence?

11           MR. BALSAMELLO:  No, your Honor.

12   ████████████████████████████████████████████████

13   ███████████████████████████████████████████████████████████

14   ███████████████████████████████

15   ███████████████  ███████  ██████████████████████████████████

16   ████

17   ████████████████████████████████████████████████████████

18   █████████████████████████████████████████████████████

19   ███████████████████████

20   ███████████████████████████

21   ██████████████  █████████

22   ██████████████  █████████████████████████████

23   ████████████████████████████████████████████████████  ██

24   █████████████████████████████████████████████████████████████

25   ███████████████████████████████████████████████

XK4DsREY                          SEALED

1   █████████████████████████████████████████

2              ████████████   ████████████████

3          THE COURT:  ████  ████████████   ██████████████████

4   ████████████████████████████████████████████████

5   █████████████████████████████████████

6              Mr. Kirton, as just modified by my discussion with

7   Mr. Balsamello, is there any legal reason why I may not impose

8   the sentence that I've just discussed?

9              MR. KIRTON:  No, your Honor.

10             THE COURT:  OK.  All right.  Mr. Reyes, normally at

11  this time I would you ask to stand, but as long as you listen

12  very carefully to what I am saying, that is the important

13  thing.

14             Based on my review of the factors set forth in

15  Section 3553(a) of Title 18 of the United States Code, I find

16  that a term of time served is sufficient but not greater than

17  necessary to comply with all of the purposes of sentencing.

18             I am ordering that this period of imprisonment be

19  followed by a four-year period of supervised release with

20  the mandatory standard and special conditions that we have

21  discussed in this proceeding.

22             I am not imposing a fine or restitution or forfeiture,

23  but I am imposing a $100 special assessment.

24             Mr. Reyes, do you understand your sentence?

25             THE DEFENDANT:  Yes, ma'am.

XK4DsREY                            SEALED

1          THE COURT:  Mr. Reyes, to the extent that you have not

2     waived this, you have the right to appeal from your conviction

3     and from your sentence.  If you are interested in appealing

4     from your conviction or your sentence, you need to speak with

5     Mr. Kirton about that promptly.  Generally speaking, you have

6     14 days from the day that the written judgment of conviction is

7     entered.  That will probably be today or tomorrow.  So if there

8     is an issue with appeal, please speak with Mr. Kirton.

9          Do you understand that, sir?

10          THE DEFENDANT:  Yes, ma'am.

11          THE COURT:  All right.  Mr. Balsamello, are there

12     underlying charging instruments or charges that you wish to

13     dismiss at this time?

14          MR. BALSAMELLO:  I don't believe so as to this

15     defendant.  If there were, I move to dismiss them.

16          THE COURT:  I didn't see any either.  Let's go with

17     that.

18          Let me have a couple -- let me offer a couple more

19     housekeeping points, please.

20          Mr. Balsamello, would you please obtain a transcript

21     of this proceeding in the ordinary course, and when you receive

22     it, please give it to Mr. Kirton to give to his client?

23          MR. BALSAMELLO:  I'll do that, yes.

24          THE COURT:  Thank you.

25     ████████████████████████████████████████████████

XK4DsREY                              SEALED

XK4DsREY                        SEALED

1  ████████████████████████████████████████████████

2  ████████

3        ████████████████████████████

4        MR. KIRTON:  Thank you, your Honor.  Thank you for

5  advancing the case from May 7 and April 16 to today.

6        THE COURT:  Of course.

7        MR. KIRTON:  We really appreciate that.

8        I also thank the government for consenting to the

9  case's being advanced.

10        THE COURT:  Mr. Balsamello, I thank you as well.

11        ████████████████████████████████

12  ███████████████████████████████████

13  ████████████████████████████████████████████

14  ██████████████████

15        MR. BALSAMELLO:  ████████████████████████  █

16  ██████████████████████████████████████

17  ████████████████████████████████████████████

18  ███████████████████████████████████████████

19  ███████████████████████████████████████

20  ████

21        ████████████████████████████████████████

22  ████████████████████████████████████████████████

23        ████████████  I've also spoken with the marshals, and they

24  indicate that given that he has tested positive, he would be

25  remotely processed out by them.  I'm not sure what that

XK4DsREY                          SEALED

1   actually looks like, but the marshals will be able to process

2   him out whenever the court orders that that happen.  So as soon

3   as that release order is done and as soon as there is a safe

4   place for him to go, they will be able to move him on.

XK4DsREY                                SEALED

1    ████████████████████████████████████████████████████

2                    ████████████    ████████████████████

3                    ████████████    ██████████████  ████████████

4    ██████

5            THE COURT:   ████████████   ████████████

6    ████████████████████

7            Mr. Kirton, I'm going to ask you a favor as well,

8    please, sir.  Just because of the nature of these proceedings

9    and the way in which they are taking place, may I please impose

10   upon you the obligation with checking with the probation office

11   in the next couple days to make sure that there is someone who

12   is slated to supervise Mr. Reyes and he is not lost in the

13   shuffle because of this pandemic?

14           MR. KIRTON:  That's fair, your Honor.

15           THE COURT:  If there are any problems with that,

16   again, give me a call or send an e-mail to chambers and we will

17   work it out.

18           MR. KIRTON:  That's fair.  Thank you.

19           THE COURT:  Thank you very much.

20           Mr. Balsamello, from your perspective, anything else

21   to address today?

22           MR. BALSAMELLO:  No, your Honor.

23                    ████████████████████████████████████████

24   ████████████████████████████████████████████████████████

25   ████████████████████████████████████████████

XK4DsREY                          SEALED

1          Nothing else from the government.  Thank you.

2          THE COURT:  Thank you.

3          Mr. Kirton, anything else on behalf of your client?

4          MR. KIRTON:  No, your Honor.  Thank you very much.

5          THE COURT:  All right.  Sir, I sincerely wish you luck

6    in finding a place for Mr. Reyes to land today.

7          Mr. Reyes, sir, my sincerest hope is that you do not

8    get any sicker, that your symptoms resolve themselves quickly,

9    that you join your niece and her sons or her children in the

10   near term, and that you finally make it out to Pennsylvania to

11   begin a new life.

12         I wish you well, sir, and I hope not to see you in

13   another criminal case.

14         Be well, Mr. Reyes.

15         THE DEFENDANT:  Thank you, ma'am.

16         THE COURT:  Thank you.

17         With this, we are adjourned.

18         If I could ask everyone to disengage from the call

19   other than my law clerk and my deputy.

20         Thank you very much.

21         THE DEFENDANT:  Hold on.

22         THE COURT:  Yes, sir.  What's up, Mr. Reyes?

23         THE DEFENDANT:  I want to tell my lawyer, when the

24   call gets cut off, I'm going to call to his cell phone so he

25   can pick up.

1          MR. KIRTON:  No problem.

2          THE COURT:  OK.  He now has that information.

3     Thank you very much, Mr. Reyes.

4          THE DEFENDANT:  OK.  Thank you, your Honor.

5          THE COURT:  All right.

6          MR. KIRTON:  Thank you.

7                              *   *   *

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25